[No. 5956.]

## DART v. HUGHES ET AL.*

1. **Corporations—Seal—Presumption**—Nothing appearing to the contrary, it will be presumed that a scroll affixed to the annual report of a corporation, and which the attestation clause, subscribed by the president and secretary, declares to be the seal of the corporation, was in fact such seal.—(468)

2. ——**Annual Report—Not Under Seal**—The annual report of a corporation conforming in all other respects to the requirement of the statute, is not invalidated by the absence of the corporate seal.—(469)

3. **Limitations—Action Against Corporate Officers for Failure to File Annual Report**—Under section 2907, Mills' Stats. (Rev. Stats., sec. 4068), the action given by Mills' Stats., section 491 (Rev. Stats., sec. 911) against the directors of a corporation, for the debts thereof, is barred after the lapse of one year from the occurrence of their failure to file the annual report. The statute begins its course when the offense is committed, both as to debts then due and those subsequently contracted. —(470)

4. **Cases Overruled**—The doctrine of Larsen v. James, 1 Col. App. 313, and Colorado Fuel and Iron Co. v. Lenhart, 6 id. 511, that as to debts accruing against the corporation subsequent to

---

*Decided June 6, 1910. Time to file petition for rehearing extended to June 30. No petition filed. Publication delayed because the failure to file the petition for rehearing was not brought to attention of the reporter.

(30)

the failure to file the annual report, the statute begins to run against the action given against the directors, from the date on which a cause of action accrued against the corporation, overruled—(473)

*Error to Denver District Court*—Hon; SAMUEL L. CARPENTER, Judge.

Mr. ROYAL R. GRAHAM and Messrs. STEVICK & BANNISTER for plaintiff in error.

Mr. JOHN Q. DIER for defendants in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

Plaintiff in error was plaintiff below, and defendants in error defendants below. It is sought to charge the defendants, personally, as officers and directors of a corporation, with certain corporate debts, because of the failure to file, or cause to be filed, annual reports, as required by statute.

Suit was begun September 28, 1904. The complaint counts upon seven separate causes of action. The first is plaintiff's own, for work done and services rendered, between the second day of November, 1903, and March 31st next following. The other six causes of action are assigned ones, and are for work done and supplies furnished between November 1, 1902, and April 1, 1904. It is averred that, for neither of the years 1903 and 1904 had the statutory annual report been filed by, or on behalf of, the Comstock Leasing and Mining Company, of which, during the times mentioned in the complaint, the defendants were its officers and directors, hence personally liable for the payment of the indebtedness sued on. Practically the entire debt claimed was contracted between November 1, 1903, and April 1 next thereafter.

On March 1, 1904, the company, as matter of fact, did file an annual report, but plaintiff says such

report, being without the company's official seal, was and is a nullity, and that the officers and directors of the company are therefore individually liable under the statute. The defendants plead specially the bar of the statute against the suit, so far as the failure to file the 1903 report is counted on; also that the 1904 report covers all indebtedness for the preceding year, and relieves the officers and directors of liability for that period, and as well for any indebtedness contracted after March 1, 1904, when a report was filed. There is also a plea to the effect that the claims covered by the six causes of action, from two to seven inclusive, were not assignable; and there were also general denials of the averments in the several causes of action. The defendants preserved exceptions and objections to the judgment allowed against them for $177.75, on the ground that the action was barred, and assigned cross-error for this reason.

In the first cause of action, there are two items of indebtedness; one for $177.75, which accrued between November 1, 1903, and the last day of February, 1904; the other of $42.75, which accrued between the first day of March and the first day of April, 1904. The court below awarded judgment on the first cause of action for $177.75, and disallowed the claim for $42.75. On the ground that the claims covered by the six causes of action, from two to seven inclusive, were non-assignable, so as to permit an assignee to sue thereon, and thus visit a penalty on the defendants, as officers and directors of the company, the court declined to allow proof thereof, and dismissed them. The $42.75 item was disallowed on the ground that it was contracted after the filing of the March, 1904, report. The liability of the officers and directors as to the $177.75 item was adjudged because of no annual report for the year 1903. For

alleged error in dismissing causes of action based on assigned claims, plaintiff brings the judgment here for review.

The case may be disposed of by a determination of these two questions:

First: Was the report filed on March 1, 1904, in compliance with the statute in that behalf? And,

Second: Does the statute of limitations bar the right of action against the officers and directors of the company for the failure of the latter to file, or cause to be filed, its annual report for the year 1903?

The testimonium clause of the report filed March 1, 1904, is as follows:

"In witness whereof, the president of the said corporation has hereunto set his hand and caused the corporate seal to be affixed this 1st day of March, A. D. 1904.          "CHARLES J. HUGHES, Jr.,
          "(Seal)                                    *President.*
"Attest:
          "CLYDE TURNBULL,
                    *Secretary.*"

The report was formally subscribed, sworn to and attested, showing that Hughes and Turnbull were, respectively, the president and secretary of the Comstock Leasing and Mining Company, and that the facts set forth therein are true, full and complete.

There is nothing in the proofs to show what the company official seal in fact is, or that one was ever adopted. In the absence of proof to the contrary, it must be presumed that the seal which appears attached to the report, being the word "seal" within quotation marks, purporting to be its seal, is the true seal of the company, so that, in the present state of the record, the report was and is properly authenticated, by and under the official company seal, and is then a good and valid report, as matter of law, no

other objection being urged against it.—*Bliss v. Harris*, 38 Colo. 72; *Railway Company v. Hooper*, 160 U. S. 514; *In re Hacker's Appeal*, 121 Penn. St. 192; *Thayer v. Mill Company*, 31 Ore. 437; and *District of Columbia v. Camden Iron Works*, 181 U. S. 453, and cases cited.

Even had the report been without the seal, or purported seal, of the company, we are of opinion that it still would be in substantial compliance with the statute, and thus sufficient. It was signed and sworn to by the president and secretary of the company, was full, complete and detailed. It gave to the public all and the precise information which the statute intended such companies should furnish. The mere failure in such case to attach the corporate seal to the report is not of substance, but of form merely. The seal could have added nothing to the value and effect of the report, which was definitely authenticated by the signatures of those officers whose duty it is under the statute to authenticate and verify such instruments. To hold this report insufficient would be to subordinate substance to shadow; to recognize and enforce the veriest technicality, at the expense and sacrifice of valuable rights. To so rule would be contrary to both law and equity.

The statute of limitations applicable to this action is section 2907, of 2 Mills', which reads as follows:'

"All actions and suits, for any penalty or forfeiture of any penal statute brought by this state, or any person to whom the penalty or forfeiture is given, in whole or in part, shall be commenced within one year next after the offense is committed, and not after that time."—*Clough v. Rocky Mountain Oil Co.*, 25 Colo. 520; *Hazelton v. Porter*, 17 Col. App. 1.

The statute under which this suit was instituted, making the officers and directors liable for the debts

of the corporation for failure to file annual reports, is found in the Session Laws of 1901, beginning at page 121, section 11:

"Every . corporation, joint stock company or association, incorporated by or under any general or special law of this state, or by any general or special law of any foreign state or kingdom, or of any state or territory of the United States, beyond the limits of this state, shall, within sixty days next after the first day of January in each year, commencing with the year 1902, make and file an annual report in the office of the secretary of state, showing, etc.   *   *   *"

"And if any such corporation, joint stock company or association, shall fail, refuse or omit to file the annual report aforesaid, and to pay the fee prescribed therefor, within the time above prescribed, all the officers and directors of said corporation shall be jointly and severally and individually liable for all debts of such corporation, joint stock company or association that shall be contracted during the year next preceding the time when such report should by this section have been made and filed, and until such report shall be made and filed."

The offense for which recovery of a penalty is sought in the first cause of action occurred immediately after March 1, 1903, when the Comstock Leasing and Mining Company failed to file, or cause to be filed, its annual statement for the year 1902. That statement or report should have been filed not earlier than January 1, and not later than March 1, 1903. On March 2, 1903, the default occurred. The offense was the failure to file the annual report. Immediately the statute began to run against the liability of the officers and directors of the company because of such failure. This suit was begun September 28, 1904, about one year and seven months after the

cause of action accrued. Nothing may be recovered in this suit on any of the causes of action for the 1903 default, because begun too late, and after each cause of action contained therein was barred. This has been definitely and precisely ruled in *Hazelton v. Porter, supra.*

Since we hold the 1904 report to be valid and sufficient, then there can be no recovery at all, on any theory, and the judgment in favor of plaintiff below for $177.75 is erroneous. It is clear that, as the annual report of the company for 1903 was filed March 1, 1904, there is no liability on the part of the officers and directors of the company individually for debts contracted thereafter.

In *Hazelton v. Porter, supra,* discussing the precise question here under consideration, among other things the court says:

"The plaintiff concedes, it having been so expressly decided by the appellate courts of this state, that section 491 is a penal statute, and that the limitation statute which applies to actions under it is that which we have just quoted. The sole question to be determined is: "When, under the facts of this case, did the limitation statute begin to run? It is claimed by the plaintiff that it did not begin to run until a cause of action accrued to him against the company for the collection of the debt. The defendants insist that the statute began to run at the time when the default of the directors occurred, which made them liable for a penalty, it being, in this case, under the conceded facts, March 2, 1891. In this contention, we believe that the defendants are correct.

"Counsel for plaintiff have made a very able and forcible argument in support of their theory, but in our opinion the question is definitely settled against them, not only by the plain reading of the statutes, but by the express adjudications of both appellate courts in this jurisdiction.  *  *  *

"This court, in *C. F. & I. Co. v. Lenhart*, 6 Col. App. 515, said, in considering this section: 'When the liability to the penalty is incurred, the creditor's cause of action for its recovery accrues, and the statute is set in motion, and does not stop until the action is commenced or barred.' We do not think language could be plainer. To the same effect is *Clough v. R. M. Oil Co.*, 25 Colo. 528, also in a case involving the construction of the same section. The liability of the directors does not arise from any promise to pay, express or implied, or from any contractual relation whatever. The law imposes it upon them as a penalty for an offense committed by them in disobeying its mandates, and the measure of the penalty is the amount of the indebtedness contracted during the preceding year.

"Plaintiff insists that this construction of the law would enable directors to evade it by the simple device of so arranging that debts contracted shall not become due until more than one year after the time when their next annual report is required. We see no force in the argument. It is not to be presumed that either party had in contemplation at the time when the debt was contracted, or at any time, that there would be such a failure to do something which would impose a personal liability upon the directors, when they could so easily escape it by causing a report to be made. However, if the creditor had it in contemplation, he might have insisted that the times of payment should be fixed to give him the benefit of the happening of such an event if it should happen. Moreover, we do not have before us the question as to whether the plaintiff, by reason of defendant's default, could have maintained a suit against them before the debt had matured, so as to give him a cause of action against the company. That question is not in the case. We are simply holding that,

in this case, for a failure of the defendants to have caused the annual report of the company to have been filed on or before March 2, 1891, a cause of action accrued to plaintiff against them for the penalty prescribed in section 491; and the measure of that penalty, for the recovery of which plaintiff then became entitled to sue, was the amount of the debt involved in this action; and that such being the case, the limitation statute then began to run, and continued without interruption for one year thereafter, when the bar of the statute was complete. If this works any hardship, the responsibility must be with the legislature, and not with the courts.  *  *  *

"As this court said, in *Thatcher v. Salomon, supra,* directors of corporations, in view of the special privileges granted to them, should be held to the strictest observance of all of the duties and obligations imposed upon them by law. There is no room, however, for judicial construction when the provisions of the statute are expressed in plain and unambiguous language, and creditors and directors alike must take notice. If, under its terms, circumstances might arise wherein it might seem to work a hardship or injustice, the remedy is with the legislature alone."

If this opinion means anything, it is that *Larsen v. James,* 1 Col. App. 313, and *Fuel & Iron Company v. Lenhart,* 6 Col. App. 511, both of which seem to announce the doctrine, although not necessary to either decision, because the point was not involved, that as to subsequent debts, as to officers and directors, the statute begins to run from the date a cause of action accrued thereon against the company, are on this point, in effect, if not expressly, overruled.

The statute began to run, as to all right of action against these defendants, when the offense was committed. The failure to file the report is the

starting point. By the express terms of the statute, there can be no other time when it is set in motion. When the statute once begins to run, it does not stop until the year is complete, or until an action, within the year limit, is commenced. The statute begins to run at that time, not only as to company debts already contracted, but against those which may thereafter be contracted—that is, it is then set in motion both as to liabilities accrued and contingent ones. The dates when company debts are contracted, or fall due, have no bearing upon the running of the statute. No action may be maintained, if the statute is relied upon in bar, against the officers and directors of a corporation for any debt, whenever contracted, either before or after default in filing the annual report, after the expiration of one year from such default. This is the express provision of the statute. It is so definite and certain that there is no room for construction. If the statute, as written, does not express the intention and purpose of the legislature, it must enact one that does. Courts may not, by construction, give to statutes a meaning directly contrary to that which is, in clear and precise language, plainly and unambiguously declared. We cite, as bearing upon and supporting our conclusion, the following additional authorities: *Risdon I. & L. Works v. Von Stroch,* 166 Fed. 936; *State Savings Bank v. Johnson,* 18 Mont. 440; *Link v. McLeod,* 194 Penn. St. 566; *Hunt v. Ward,* 99 Cal. 612.

This view of the case renders it unnecessary to consider, discuss or determine the question of the assignability of the causes of action which the court below rejected as not being of that character.

The judgment is reversed and remanded, with directions to dismiss the suit.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE WHITE concur.